# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OZARK MOTOR LINES, INC., | ) | Case No. 3:18-cv-241 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| MARK BOREN, DEV | ) | |
| TRANSPORTATION, LLC, and GURMIT | ) | |
| SINGH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is *pro se* Defendant Mark Boren's Motion to Dismiss (ECF No. 11). This Motion has been fully briefed and is ripe for disposition. (*See* ECF Nos. 11, 17.)

For the reasons that follow, Mr. Boren's Motion (ECF No. 11) is **DENIED**.

### II. Jurisdiction

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff Ozark Motor Lines, Inc. ("Ozark") is a citizen of a different state than Defendants Mark Boren, Dev Transportation, LLC ("Dev Transportation"), and Gurmit Singh (collectively, "Defendants") and the amount in controversy exceeds $75,000. (ECF No. 1 ¶¶ 1-7.)

### III. Background[1]

Ozark filed its Complaint (ECF No. 1) against Defendants on November 29, 2018.

---

[1] The factual allegations in this Background are taken from Ozark's Complaint and are assumed to be true for purposes of deciding the present Motion. In this section, the Court has included only the facts and procedural history that are relevant to the pending Motion.

In the Complaint, Ozark alleges that Mr. Boren was employed by Ozark as a tractor-trailer driver. (*Id.* ¶¶ 2, 10.) On June 4, 2017, Mr. Boren was driving an Ozark tractor-trailer on Interstate 80 in Clearfield County, Pennsylvania. (*Id.* ¶¶ 10, 27.) Mr. Boren was traveling at a safe speed and was alert, attentive, and keeping proper lookout. (*Id.* ¶¶ 15-16.) A commercial vehicle owned by Dev Transportation and driven by Mr. Singh was traveling ahead of Mr. Boren. (*Id.* ¶ 11.) Mr. Boren was traveling at a safe distance behind the Dev Transportation vehicle. (*Id.* ¶ 16.)

Without warning, Mr. Singh lost control of the Dev Transportation vehicle, impacted the embankment in the median of Interstate 80, and jackknifed across both lanes of Interstate 80 westbound. (*Id.* ¶¶ 11, 16.) The Ozark tractor-trailer driven by Mr. Boren was forced off the road into the guardrail. (*Id.* ¶ 12.) The Ozark tractor-trailer bounced off the right shoulder of the guardrail and impacted the Dev Transportation vehicle, after which the Ozark tractor-trailer also jackknifed across both lanes of Interstate 80. (*Id.* ¶ 13.) Mr. Boren was injured in the accident and the Ozark tractor-trailer sustained major damages. (*Id.* ¶¶ 13-14.)

Following the accident, Ozark paid Mr. Boren $29,543.11 for medical expenses and $24,121.24 for temporary total disability benefits pursuant to the Tennessee Workers' Compensation Act (the "Act"). (*Id.* ¶¶ 17-19.) Mr. Boren is also eligible to receive $36,269.55 in permanent partial disability benefits pursuant to the Act and future medical benefits related to his injuries. (*Id.* ¶¶ 17-18, 20.)

Ozark has been informed that Mr. Boren settled with Mr. Singh and Dev Transportation and received a net settlement in excess of the amounts paid or to be paid by Ozark to Mr. Boren. (*Id.* ¶ 22.) While Ozark received $32,198.61 from Mr. Singh and Dev Transportation supposedly in partial payment of the benefits paid on behalf of Ozark to Mr. Boren, Ozark has not settled

2

with Mr. Singh and Dev Transportation and has not been reimbursed in full for the workers' compensation benefits it has paid and will pay to Mr. Boren. (*Id.* ¶¶ 21-22.) Pursuant to the Act, Ozark asserts that it maintains a statutory workers' compensation subrogation lien against Mr. Boren's settlement. (*Id.* ¶¶ 22, 24.)

Ozark brought one claim against Dev Transportation and Mr. Singh for negligence. Ozark also brought a claim for a workers' compensation lien against Mr. Boren, Dev Transportation, and Mr. Singh. (*Id.* ¶ 39.)

On March 5, 2019, Mr. Boren filed a *pro se* Answer and Motion to Dismiss (ECF No. 11). Mr. Boren appears to argue for his dismissal as a defendant due to (1) failure to state a claim and (2) improper venue. In terms of dismissal for failure to state a claim, Mr. Boren argues that Ozark agreed to accept a $32,198.61 subrogation payment, which was paid to Ozark. (*Id.* ¶¶ 7, 12.) Moreover, according to Mr. Boren, he does not owe Ozark money for property damage because he did not cause the tractor-trailer accident. (*Id.* ¶¶ 9, 11-12, 16.) Mr. Boren also argues that the Complaint should be dismissed for improper venue, as he is a resident of Alabama and the subrogation claim derived from a contract made in Tennessee. (*Id.* ¶¶ 14-15.) Alternatively, he requests that the case be transferred to the Northern District of Alabama. (*Id.* ¶¶ 13-14, 20.)

Ozark responded to the Motion on March 25, 2019. (ECF Nos. 16, 17.) Ozark asserts that venue is proper in the Western District of Pennsylvania because the event giving rise to the claims—namely, the tractor-trailer accident—occurred in Clearfield County, Pennsylvania. (ECF No. 17 at 3-4.) According to Ozark, the damages it suffered, including the costs for tractor-trailer repair, accident scene cleanup, and medical costs and disability benefits provided to Mr. Boren,

all stem from this accident. (*Id.* at 4.) Ozark does not address Mr. Boren's argument for transfer of venue.

Further, Ozark argues that it plausibly alleges that it paid Mr. Boren for medical expenses and disability benefits and that it has not been reimbursed for all of the money it paid. (*Id.* at 6.) Ozark therefore contends that it has a proper subrogation lien against Mr. Boren under the Act. (*Id.*)

## IV. Discussion

### A. Venue is Proper in the Western District of Pennsylvania.

#### 1. Legal Standard

"When considering a motion to dismiss for improper venue, the court must generally accept as true the allegations in the pleadings and must view the facts in the light most favorable to the nonmoving party." *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 557–58 (M.D. Pa. 2015) (quoting *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005)); *Connell v. CIMC Intermodal Equip.*, No. 1:16-CV-714, 2016 WL 7034407, at *2 (M.D. Pa. Dec. 2, 2016). "The party moving for dismissal or transfer based upon improper venue bears the burden of proof." *Rabner v. Titelman*, No. 15-1313, 2016 WL 1613444, at *4 (W.D. Pa. Apr. 22, 2016) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982); *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005)); *Wozniak v. Johnston*, No. CIV.A. 09-238, 2009 WL 1307459, at *2 (W.D. Pa. May 8, 2009).

28 U.S.C. § 1391(b) sets out the requirements for proper venue. It provides:

A civil action may be brought in—

4

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Clark v. Branch Banking & Trust Co.*, CIVIL ACTION NO. 1:19-179, 2019 WL 1112235, at *1 (M.D. Pa. Mar. 11, 2019) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013)). "If it does, venue is proper; if it does not, venue is improper and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Id.* (alteration in original) (quoting *Atl. Marine*, 571 U.S. at 56).

In this case, it is clear that § 1391(b)(1) does not apply because Defendants are not residents of the same state. (ECF No. 1 ¶ 6.) Thus, the Court will focus on whether § 1392(b)(2) provides a basis for venue in this District.

"[I]n determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction" under § 1391(b)(2), "[t]he test . . . is not the defendant's contacts with a particular district, but rather the location of those events or omissions giving rise to the claim."[2] *Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 161 (3d Cir.

---

[2] The Third Circuit has explained that "the venue provision 'favors the defendant . . . by requiring that the events or omissions supporting a claim be substantial'" because "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.'" *Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)).

5

2012) (internal quotation marks omitted) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). "[I]n assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Prominent GmbH v. Prominent Sys., Inc.*, No. 2:16-CV-01609, 2017 WL 1316362, at *18 (W.D. Pa. Apr. 10, 2017) (quoting *Cottman*, 36 F.3d at 295); *see Lorven Techs., Inc. v. Insight Techs., Inc.*, No. CV167397FLWDEA, 2017 WL 2670971, at *3 (D.N.J. June 21, 2017).

### 2. Analysis

Mr. Boren argues that venue is improper in this District because (1) he is a resident of Alabama and the other parties are residents of California and Tennessee and (2) "[t]his case is not a truck wreck case, but a subrogation case deriving from a contract based out of Tennessee which is where Ozark is based." (ECF No. 11 ¶¶ 14-15, 18.)

Ozark counters that venue is proper here pursuant to § 1391(b)(2) because the underlying tractor-trailer accident occurred in this District. (ECF No. 17 at 4.)

The Court agrees that venue is appropriate in this District, albeit for a different reason than that suggested by Ozark. Generally, "venue must be established for each separate cause of action." *High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005). Thus, although the events underlying the negligence claim occurred in this District, that does not necessarily mean that venue is proper here for the subrogation claim.[3]

---

[3] Mr. Boren characterizes Ozark's claim against him as a subrogation claim deriving from a contract entered into in Tennessee, as opposed to a tractor-trailer accident claim. (ECF No. 11 ¶ 14.) Construing this argument liberally, the Court understands Mr. Boren as raising the issue of different claims necessitating different venue analyses.

6

However, the doctrine of pendent venue[4] is an exception to this general rule. The pendent venue doctrine applies when multiple claims arise out of the same operative facts. *Id.; McKinney v. Pinter*, CIVIL ACTION No. 18-4185, 2019 WL 952247, at *4 (E.D. Pa. Feb. 26, 2019); *Phila. Musical Soc., Local 77 v. Am. Fed'n of Musicians of U.S. and Can.*, 812 F. Supp. 509, 517 n.3 (E.D. Pa. 1992). If the doctrine applies, venue is appropriate in a district in which a substantial part of the events giving rise to one claim occurred even if venue over the pendent claim would not otherwise be proper. *See High River*, 353 F. Supp. 2d at 493. "[A] court examining whether to apply pendent venue should consider whether the claims derive from a common nucleus of operative fact and whether allowing for pendent venue would further the goals of judicial economy, convenience, and fairness to the litigants." *Id.*

The Court finds pendent venue is appropriately applied in this case. Looking solely at the subrogation claim, the *substantial* events giving rise to this claim—the settlement with Dev Transportation and Mr. Singh and the receipt of workers' compensation from Ozark—did not take place in Pennsylvania. However, the negligence claim and the subrogation claim clearly derive from a common nucleus of operative fact: the tractor-trailer accident and the injuries caused thereby. Moreover, allowing for pendent venue over the subrogation claim would promote judicial economy and convenience by permitting Ozark to litigate its related claims in one forum. Thus, the Court finds that venue is proper in the Western District of Pennsylvania.[5]

---

[4] The doctrine of pendent venue is derived from the concept of pendent jurisdiction. *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) (citing *Beattie v. United States*, 756 F.2d 91, 101 (D.C. Cir. 1984), *overruled on other grounds by Smith v. United States*, 507 U.S. 197 (1993)). While the doctrine of pendent jurisdiction is now codified and referred to as supplemental jurisdiction, the doctrine of pendent venue has not been similarly codified or renamed.

[5] While Mr. Boren argues that his residency and lack of contacts with Pennsylvania necessitate a finding of improper venue, "[t]he test for determining venue [under § 1391(b)(2)] is not the defendant's 'contacts'

7

## B. The Court Will Not Transfer this Case to Alabama.

### 1. Legal Standard

"In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Section 1406 "applies where the original venue is improper and provides for either transfer or dismissal of the case." *Id.* Section 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." *Id.* Because venue in this District is proper, as explained *supra*, § 1404(a) applies to the present case.

Under § 1404(a), the Court may transfer a case in "the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When "ruling on a motion under § 1404(a), the court is free to consider 'all relevant factors,' and the Third Circuit directs district courts to a list of certain private and public interest factors."[6] *Lannett Co. v. Asherman*, No. CIV.A. 13-2006, 2014 WL 716699, at *6 (E.D. Pa. Feb. 24, 2014) (quoting *Jumara*, 55 F.3d at 879). "Unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Molchen v. Ford Motor Co.*, No. 02:08cv0954, 2008 WL 4981596, at *4 (W.D. Pa. Nov. 20, 2008) (quoting *Shutte v. Armco Steel Corp.*, 431 F.3d 22, 25 (3d Cir. 1970)).

---

with a particular district, but rather the location of those 'events or omissions giving rise to the claim' . . . ." *Cottman*, 36 F.3d at 294; *McKinney*, 2019 WL 952247, at *3 ("Venue is determined by the location of events, omissions, or property rather than the defendant's contacts with a particular district." (citing *Cottman*, 36 F.3d at 294)).

[6] "The above list of factors is merely a guide, and not all the factors may be relevant or determinative in each case." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV. A. 09-290, 2009 WL 3055300, at *2 (W.D. Pa. Sept. 21, 2009) (quoting *LG Elec., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 587 (D.N.J. 2001)).

"The private factors include (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of the books and records." *Crayola, LLC v. Buckley*, 179 F. Supp. 3d 473, 480 (E.D. Pa. 2016) (citing *Jumara*, 55 F.3d at 879).

"The public factors include (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citing *Jumara*, 55 F.3d at 879-90).

### 2. Analysis

Mr. Boren argues for the transfer of this case to Alabama. However, only Mr. Boren's residency in Alabama appears to connect the present case with that state. Without more evidence regarding the locations of other events and omissions related to this case, such as where Mr. Boren was treated for his injuries, where he applied for and received workers' compensation, and where he negotiated the settlement with Dev Transportation and Mr. Singh, the Court cannot determine whether the subrogation claim against Mr. Boren might have been brought in Alabama under 28 U.S.C. § 1391(b). *See Shutte*, 431 F.3d at 24 ("[A] transfer is authorized by the statute only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action; i.e., venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants.").

9

Thus, the Court need not consider the public and private factors, as Mr. Boren has not sustained his burden of showing that Alabama would be an appropriate venue for the claim against him. *See Vangura Kitchen Tops, Inc. v. C & C N. Am., Inc.*, No. 08cv1011, 2008 WL 4540186, at *4 (W.D. Pa. Oct. 7, 2008) ("The moving party bears the burden of proving that venue is proper in the transferee district....").

### C. Ozark Has Stated a Claim for a Subrogation Lien and Credit.

#### 1. Legal Standard

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But, detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by the Supreme Court, a court reviewing the sufficiency of a complaint must take three steps.[7] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the

---

[7] Although the Supreme Court described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

10

assumption of truth." (citation omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## 2. Analysis

Tennessee workers' compensation law provides that an injured employee who received workers' compensation benefits may pursue an action against the third-party tortfeasor that caused his injuries. *Graves v. Cocke Cty.*, 24 S.W.3d 285, 286 (Tenn. 2000) (citing Tenn. Code Ann. § 50-6-112(a)); *Summers v. Command Sys., Inc.*, 867 S.W.2d 312, 313 (Tenn. 1993). However, in order to prevent the employee from receiving a recovery from both his employer and the third-party tortfeasor for the same injuries, Tennessee law allows the employer to enforce a subrogation lien against the employee's third-party recovery.[8] *Graves*, 24 S.W.3d at 287; *Summers*, 867 S.W.2d at

---

[8] Specifically, Section 50-6-112 of the Tennessee Code provides, in relevant part:

> (c)(1) In the event of a recovery against the third person by the worker . . . by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien against the recovery, and the employer may intervene in any action to protect and enforce the lien.
>
> (2) In the event the net recovery by the worker . . . exceeds the amount paid by the employer, and the employer has not, at the time, paid and discharged the employer's full maximum liability for workers' compensation under this chapter, the employer shall be entitled to a credit on the employer's future liability, as it accrues, to the extent the net recovery collected exceeds the amount paid by the employer.

11

313-14; *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 536-37 (Tenn. 2006); *Hickman v. Cont'l Baking Co.*, 143 S.W.3d 72, 76 (Tenn. 2004); *Memphis Light Gas & Water Div. v. Watson*, No. W2018-00218-COA-R3-CV, 2019 WL 589838, at *1 (Tenn. Ct. App. Feb. 13, 2019).

Ozark claims entitlement to a subrogation lien pursuant to Section 50-6-112(c)(1) of the Tennessee Code and to a credit on its future liability under Section 50-6-112(c)(2)-(3). (*See* ECF No. 1 ¶¶ 39-40.)

Under Section 50-6-112(c)(1), for an employer to be entitled to a subrogation lien, (1) the employee must have recovered against a third party by judgment, settlement, or otherwise; and (2) the employer's maximum liability for workers' compensation must have been fully or partially paid and discharged. Tenn. Code Ann. § 50-6-112(c)(1); *see Hickman*, 143 S.W.3d at 77 ("[T]he employer is entitled to a subrogation lien against the employee's third-party recovery if the employer has fully *or partially* paid and discharged its maximum workers' compensation liability.").

Here, Ozark alleges that Mr. Boren received a settlement from Mr. Singh and Dev Transportation related to the underlying tractor-trailer accident. (ECF No. 1 ¶ 22.) Furthermore, Ozark alleges that it paid Mr. Boren for his medical expenses and for temporary total disability pursuant to the Act—thus partially paying its workers' compensation liability—and that it has

---

(3) In the event the worker . . . effects a recovery, and collection of that recovery, from the other person, by judgment, settlement or otherwise, without intervention by the employer, the employer shall nevertheless be entitled to a credit on the employer's future liability for workers' compensation, as it accrues under this chapter, to the extent of the net recovery.

Tenn. Code Ann. § 50-6-112(c).

12

not been reimbursed for those payments. (*Id.* ¶¶ 17-19, 21.) Ozark has thus stated a claim for a subrogation lien against Mr. Boren's settlement.

Under Section 50-6-112(c)(2), "an employer is entitled to a credit against future liability to the extent the employee's net recovery exceeds the amount that the employer has previously paid in workers' compensation benefits." *Hickman*, 1143 S.W.3d at 77-78. Ozark alleges that Mr. Boren received more from his settlement with Mr. Singh and Dev Transportation than Ozark paid Mr. Boren. (ECF No. 1 ¶ 22.) Moreover, Ozark alleges that it will pay Mr. Boren for permanent partial disability benefits in the future, establishing that Ozark has not paid its full maximum liability for workers' compensation. *See* Tenn. Code Ann. § 50-6-112(c)(2). Thus, Ozark has sufficiently alleged entitlement to a credit against its future liability for workers' compensation in the amount of Mr. Boren's net recovery.

Mr. Boren argues that "Ozark is not due property damages from my workers' compensation or from my pain & suffering claim against the third-party (Dev Transportation)." (ECF No. 11 ¶¶ 9, 11.) However, Ozark is not suing Mr. Boren for property damage—the negligence claim, which seeks damages to compensate Ozark for property damage caused by the tractor-trailer accident, is only brought against Dev Transportation and Mr. Singh, not against Mr. Boren.

Mr. Boren also argues that Ozark agreed to accept a $32,198.61 subrogation settlement, which was paid to Ozark. (*Id.* ¶¶ 7, 12.) However, at the motion-to-dismiss stage, the Court assumes that the plaintiff's factual allegations are true. Here, Ozark alleges that it has not settled with Mr. Singh and Dev Transportation, that it has not released its subrogation lien, and that it has not been reimbursed in full for the workers' compensation benefits it paid and will pay to

13

Mr. Boren as a result of the tractor-trailer accident. (ECF No. 1 ¶¶ 21, 23.) Assuming these facts to be true, the Court finds that Ozark has stated a claim for a subrogation lien and credit under the Act.

## V. Conclusion

For the reasons stated above, the Court **DENIES** Mark Boren's Motion to Dismiss. A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OZARK MOTOR LINES, INC., | ) | Case No. 3:18-cv-241 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| MARK BOREN, DEV | ) | |
| TRANSPORTATION, LLC, and GURMIT | ) | |
| SINGH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

NOW, this 28th day of March, 2019, upon consideration of Defendant Mark Boren's Motion to Dismiss (ECF No. 11) and Plaintiff Ozark Motor Lines, Inc.'s response thereto (ECF Nos. 16, 17), and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Mr. Boren's Motion to Dismiss is **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE